# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEHAN AGRAMA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:16-cv-751-RMC |
| INTERNAL REVENUE SERVICE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Jehan Agrama is facing a $900,000 tax penalty from the Internal Revenue Service, allegedly based on an expert report prepared by an Italian criminal prosecutor concerning her foreign income. Ms. Agrama wants to know how IRS received the report so that she can convince the Service that Italy violated her rights and the report is inadmissible in the United States. Thus, she submitted a FOIA request asking, in part, for records from any country outside the U.S. contained in her IRS file. None of the records produced by IRS provides a paper trail indicating how IRS agents in this country received the Italian report. Ms. Agrama sues, arguing that IRS conducted an inadequate search.

Both IRS and Ms. Agrama have moved for summary judgment, contesting whether IRS fulfilled its FOIA obligations. Upon review of the entire record, the Court will grant judgment in favor of IRS.

## I. BACKGROUND FACTS

### A. Ms. Agrama's FOIA Request

> On October 28, 2015, the IRS issued two (2) letters to [Jehan Agrama] entitled "Failure to File Form 5471." These letters claim [she] had an obligation to file Forms 5471 regarding a foreign corporation, Byram

1

> Enterprises Limited[,] for the years 1982 through 2004. Moreover, these
> letters propose continuation delinquency penalties . . . if the subject
> returns are not filed . . . .
> . . .
> [Ms. Agrama] does not have an ownership interest in Byram Enterprises
> Limited that would obligate her to file Forms 5471.

Complaint [Dkt 1] ¶¶ 5, 8.

A sensible woman, Ms. Agrama would prefer to persuade IRS to withdraw its intention to penalize her for unpaid taxes rather than be required to pay the penalty and late taxes and sue to recover her money. To this end, she submitted a request on February 16, 2016 under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, (2012) asking IRS to release to her "each and every document (exclusive of the filed tax [sic] income tax returns) contained in the administrative files of the Internal Revenue Service relating to Form 5471 proposed penalty liabilities of Jehan Agrama . . . for taxable years 1982-2004." Compl. Ex. C, FOIA Disclosure Request (FOIA Request) [Dkt. 1-3] at 1. The Request specifically sought records received "from any jurisdiction, country, principality or other entity outside the United States." *Id.* ¶ 2. IRS received the Request on February 18, 2016. Def.'s Mot. Summ. J. (IRS MSJ) Ex. C, Declaration of Karen Coen (Coen Decl.) [Dkt. 10-3] ¶ 6.

Over the course of the administrative processing of Ms. Agrama's FOIA request and this litigation, IRS has conducted multiple searches for responsive records.

- First, IRS Disclosure Specialist Karen Coen searched the IRS Integrated Data Retrieval System (IDRS), a database allowing access to data retrieved from IRS's Master File, the nationwide electronic information system containing taxpayer account information. *Id.* ¶¶ 8, 9. Ms. Coen used Ms. Agrama's unique taxpayer identification number (TIN), provided by Ms. Agrama, to conduct this search. *Id.* ¶¶ 10, 11. This initial search yielded a single possible examination activity from 2002. *Id.* ¶ 12. Inasmuch as this

- activity had occurred more than ten years earlier, any records would have been destroyed under the IRS record retention policy. *Id.* Because Ms. Coen found no other entries related to Ms. Agrama's TIN in the IDRS system, she determined that IRS had no records responsive to Ms. Agrama's FOIA request, and informed Ms. Agrama of that fact by letter on February 25, 2016. *Id.* ¶¶ 12-13.

- Ms. Coen's letter prompted counsel for Ms. Agrama to contact Ms. Coen on March 2, 2016, to inform her that Ms. Agrama had already been contacted by two IRS Revenue Agents from Los Angeles, California, Bernard Trapp and James Pack, concerning the tax penalty. *Id.* ¶ 14. Upon Ms. Coen's request, these two agents searched for records that might be responsive to Ms. Agrama's FOIA request. *Id.* They forwarded the records they located to Ms. Coen, who determined that 89 pages of records were responsive to Ms. Agrama's request. *Id.* ¶¶ 15-16. Of those records, Ms. Coen determined that three pages could be released to Ms. Agrama and the remaining 86 pages needed to be withheld in full. *Id.* ¶ 16. Ms. Coen so informed Ms. Agrama of this assessment on March 7, 2016. *Id.* ¶ 18. This decision was upheld on administrative appeal. Compl. Ex. G, IRS FOIA Appeals Response [Dkt. 1-7].

- When Ms. Agrama filed the immediate Complaint in April 2016, Attorney Christopher Valvardi of the IRS Office of Chief Counsel was assigned as agency counsel to work with the Department of Justice on the case. IRS MSJ Ex. 4, Declaration of Christopher Valvardi (Valvardi Decl.) [Dkt. 10-5] ¶ 5. His DOJ colleague told Mr. Valvardi on August 25, 2016, presumably based on information from Ms. Agrama's counsel, that Ms. Agrama had possession of an 83-page document known as the "Chersicla Report," described by Ms. Agrama as "a 'rough translation' of a non-public Italian expert witness

report," Pl.'s Am. Reply [Dkt. 26] at 1, of Italian origin for apparent use in Italian courts. Upon inquiry by Mr. Valvardi, Revenue Agent Pack and Supervisory Revenue Agent Steven Lepore confirmed that they had provided the Chersicla Report to Ms. Agrama. Valvardi Decl. ¶ 8. When Mr. Valvardi received Ms. Agrama's copy of the Chersicla Report, he determined that it was substantively identical to 83 pages of the 86 pages that Ms. Coen had earlier withheld from release to Ms. Agrama. *Id.* IRS then withdrew its reliance on any FOIA exemption to withhold those 83 pages and disclosed its version of the Chersicla Report to Ms. Agrama on September 16, 2016. *Id.* ¶¶ 9-10.

- Perhaps informed by this experience, Mr. Valvardi undertook an independent review of the records that had been provided by Agents Trapp and Pack to Ms. Coen. *Id.* ¶ 11. That review demonstrated that some of the records were incomplete. Agent Pack was queried and explained that some of the responsive records were commingled in a larger file of records that was being reviewed as part of an investigation into another taxpayer. *Id.*

- Mr. Valvardi asked Agent Pack to search the larger file manually to identify fully any responsive records, which he did. *Id.* Agent Pack sent 27 additional potentially-responsive pages to Mr. Valvardi. *Id.* ¶ 12. After review on September 6, 2016, Mr. Valvardi determined that the additional pages were responsive to Ms. Agrama's request, but were all exempt from disclosure.

In sum, IRS identified a total of 116 pages of responsive records. Of those pages, 86 have been released to Ms. Agrama in whole. The remaining 30 pages, constituting four separate documents, have been withheld in their entirety. IRS relies on FOIA Exemptions 7(A)

4

and 3 to assert that these records are wholly exempt and Exemptions 6 and 7(C) to assert that they are exempt in part.

### B. Procedural History

As the parties note, this particular FOIA lawsuit is just one of many legal proceedings touching on the question of IRS penalties. Ms. Agrama's father, Frank Agrama, has also sought IRS records under FOIA, *see Agrama v. IRS*, 16-cv-716, and Ms. Agrama forecasts that she may seek redress in the courts for other matters concerning the IRS penalty proceeding. *See* Pl.'s Opp'n [Dkt. 11] at 1. The document most at issue here, the Chersicla Report, was apparently prepared at the behest of Italian prosecutors for a criminal prosecution in that country. Pl.'s Am. Reply at 7. Ms. Agrama protests that in that process, the Italian prosecutors violated her rights to confidential communications with her attorney and that, as a result, the Chersicla Report is inadmissible in a U.S. court. *See* Pl.'s Opp'n Ex. 1, 1st Decl. of Dennis L. Perez (1st Perez Decl.) [Dkt. 11] ¶ 17. She submitted the Request to, *inter alia*, discover exactly how the Report came to be in the possession of IRS. Pl.'s Opp'n at 1.

This suit was filed on April 22, 2016. *See* Compl. IRS moved for summary judgment on November 1, 2016, *see* IRS MSJ [Dkt. 10]; Ms. Agrama opposed, *see* Pl.'s Opp'n [Dkt. 11], and filed a Cross-Motion for Summary Judgment, Pl.'s MSJ [Dkt. 12]. IRS responded, *see* Def.'s Combined Reply and Opp'n [Dkts. 17 and 18], and Ms. Agrama replied, *see* Pl.'s Reply [Dkt. 19]. Soon after, Ms. Agrama moved to supplement her reply. *See* Pl.'s Mot. to Amend Reply [Dkt. 21] at 1. This request was granted, and Ms. Agrama duly filed her Amended Reply. *See* Am. Reply [Dkt. 26]. In response, IRS requested leave to file an *in camera* affidavit and supporting brief, which was granted. *See* Def.'s Notice of Compliance [Dkt. 30]. The matter is now ripe for decision.

## II. VENUE AND JURISDICTION

Section 552(a)(4)(B) of the U.S. Code grants this Court subject matter jurisdiction over all actions brought under FOIA, and makes this an appropriate forum for venue purposes. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."); *see Jones v. Nuclear Regulatory Comm'n*, 654 F. Supp. 130, 131 (D.D.C. 1987).

The Court's jurisdiction under FOIA extends only to claims arising from the improper withholding of agency records. *See* 5 U.S.C. § 552(a)(4)(B); *see also Lazaridis v. U.S. Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010) (citing *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983)).

## III. LEGAL STANDARDS

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Under FOIA, federal agencies must release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). To prevail in a FOIA case, a plaintiff must show that an agency has improperly withheld agency records. *See Odland v. FERC*, 34 F. Supp. 3d 1, 13 (D.D.C. 2014). The defending agency must demonstrate that its search for responsive records was adequate, that any invoked

6

exemptions actually apply, and that any reasonably segregable non-exempt information has been disclosed after redaction of exempt information. *See id*.

FOIA cases are typically and appropriately decided on summary judgment. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment "bears the initial responsibility . . . [to] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. The nonmoving party, however, must provide more than a "mere existence of a scintilla of evidence . . . . [T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

## IV. ANALYSIS

The gravamen of Ms. Agrama's complaint is that IRS did not search well enough because it has failed to release records that show the provenance of the Chersicla Report, that is, how that Report came into the hands of U.S. tax agents. She questions the legitimacy of such a search and asks the Court to question it as well.

In support, Ms. Agrama submits an affidavit from Dennis Perez, a principal in the law firm of Hochman Salkin Rettig Toscher & Perez, P.C., which represents both Ms. Agrama and her father, Frank Agrama. *See* Am. Reply, Ex. 1, 2d Declaration of Dennis L. Perez (2d

Perez Decl.), [Dkt. 26-1]. Mr. Perez submits records produced to Frank Agrama, in response to Mr. Agrama's IRS FOIA request, which contain repeated references to written Exchange of Information (EOI) requests in connection with the examination of Frank Agrama's tax returns.[1] She also notes that the Internal Revenue Manual (IRM), which guides the conduct of tax examinations, cautions IRS agents that "there are no legal provisions for any 'informal' exchange of" taxpayer-specific information outside prescribed offices within IRS. Pl.'s Am. Reply at 5 (quoting IRM § 4.60.1.1.2.1.5). In further support, Ms. Agrama points out agent notes in Frank Agrama's file "demonstrate the IRS's interest in Italy and the Italian prosecution for which the Chersicla [R]eport was produced." *Id.* at 6. In addition, she contends that "Supervisory Revenue Agent Steven Lepore did note that the local IRS agents were in contact with the IRS's tax attaché responsible for Italy. *Id.* at 5. She argues, "This paper trail of EOIs to other countries, particularly when combined with the IRS's admission in Jehan Agrama's investigation that it was in contact with its tax attache, makes it nearly certain that the IRS obtained the Chersicla [R]eport through its tax attache's submission of an EOI to Italy." *Id*. at 6.

    The immediate Request occurs in the context of a much larger dispute between the IRS and Ms. Agrama and the merits of that dispute are important to her. However, the purpose, creation, and use of agency records are beyond the scope of a FOIA suit, as is the records' intended use by Ms. Agrama. At issue before the Court is the very narrow question of whether IRS met its FOIA obligations in responding to the Request.

---

[1] As. Ms. Agrama indicates, "The Internal Revenue Manual defines an 'EOI' request as an 'Exchange of Information' request, referring to 'the sharing of tax-related information between two or more countries for tax administration and enforcement purposes.'" Am. Reply at 6 n.1 (quoting Internal Revenue Manual § 4.60.1.1 (revised 09-19-2014)).

**A. Adequacy of the Search**

The adequacy of an agency search is measured by its reasonableness, which quite naturally depends on the individual circumstances of each case. *See Sanders*, 729 F. Supp. 2d at 154 (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Under FOIA, any "requester dissatisfied with the agency's response . . . may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also* 5 U.S.C. § 552(a)(4)(B). The defending agency then bears the burden of demonstrating "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

An agency may show its search was reasonable, such that summary judgment in its favor is warranted, through an affidavit by a responsible agency official, "so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Sanders*, 729 F. Supp. 2d at 155. Accordingly, affidavits that include "search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." *Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 168 (D.D.C. 2008) (quoting *Ferranti v. BATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001)). Ms. Agrama does not challenge the adequacy of the searches IRS actually conducted or the good faith efforts of its Agents. Am. Reply at 7 ("Ms. Agrama Does Not Claim the Searches Were in Bad Faith."). Instead, she contends that IRS failed to contact employees tasked with retaining EOI records to find out if they possessed responsive records and that this glaring failure demonstrates the inadequacy of the search as a whole.

IRS responds that Ms. Agrama merely speculates that more records exist. It asserts, in both its public-facing and *in camera* submissions, that its multiple searches were adequate to identify all responsive records and it submitted affidavits to that effect. *See* Def.'s Combined Reply and Opp'n at 2-6; IRS MSJ Ex. 4, Declaration of Stephen Lepore Decl. (Lepore Decl.) [Dkt. 10-4] ¶ 10.

The operative question is not whether additional records exist, or whether other possible search avenues were available, but whether the IRS searches were "reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d at 890. Notably, the Request was for documents contained in the "administrative files of the Internal Revenue Service related to proposed Form 5471 penalty liabilities of Jehan Agrama." FOIA Request at 1. IRS searched its own internal database for Ms. Agrama's TIN, and, upon learning that relevant records may be folded into the investigative file on another taxpayer, its lawyer directed the agents to perform a manual search for responsive records, which was done.

Ms. Agrama's argument is based on a logical syllogism: (1) there must be a "paper trail" behind the Chersicla Report; (2) no such record was released; therefore, (3) there must be some unsearched further records somewhere. *See* Pl.'s Am. Reply at 6. Although her Opposition appeared to challenge the good faith of IRS searches, *see* Pl.'s Opp'n at 4, she has dropped that argument in her Amended Reply and says good faith is irrelevant when a search is obviously inadequate. *See Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993) ("A finding of no bad faith does not necessarily equate with a finding that the search was adequate."). She offers two pieces of evidence to support her argument: (1) at one time, Supervisory Internal Revenue Agent Lepore referenced contact with a tax attaché, *see* 1st Perez Decl. ¶ 22; and (2) records received in response to Frank Agrama's separate FOIA request

reference multiple foreign EOI requests to unidentified nations. Pl.'s Am. Reply at 6. Neither of these points is availing.

Ms. Agrama's Request was limited to records "relating to proposed Form 5471 penalty liabilities of Jehan Agrama." FOIA Request at 1. Her Request does not seek records related to IRS's separate investigation of her father. Ms. Agrama argues that the investigations of father and daughter "significantly overlap—*according to the Cheriscla Report*" because she "is purported to have an interest in one foreign company, to which Frank Agrama allegedly was also connected." Pl.'s Am. Reply at 6 (emphasis added). Notably, Ms. Agrama does not cite IRS itself as a source for this alleged overlap. In any event, overlap or no, each person is an individual taxpayer with individual tax responsibilities. Records directly relevant to one may be relevant to the other— thus, perhaps, the commingling of records that Revenue Agent Pack manually searched—or not. EOIs to foreign nations relating to the examination of Frank Agrama's taxes may have resulted in the release of the Cheriscla Report which was then properly shared among examining revenue agents in this country.

The Court's speculation is no better than Ms. Agrama's. Her insistence that there must be a paper trail in her IRS file to detail how the Cheriscla Report reached the revenue agents looking at her taxes does not suffice to overcome the declarations of Service personnel or cast doubt upon the adequacy of its searches in light of the Request.

The Court concludes that the IRS searches were adequate.

### B. Reliance on FOIA Exemptions

To prevail on a summary judgment motion in a FOIA case, a defending agency must demonstrate that any withheld information is exempt from disclosure, and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 552(a)(4)(B). To meet this standard, agencies

11

may provide "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both."[2] *James Madison Project v. U.S. Dep't of Justice*, 208 F. Supp. 3d 265, 285 (D.D.C. 2016) (quoting *Ctr. for Int'l Envtl. Law v. U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002)).

Only 30 pages of records have been withheld from Ms. Agrama, constituting four separate documents. *See* Valvardi Decl. ¶ 15a-d. Ms. Agrama argues that these records were improperly withheld, and further that the IRS description of them in the Valvardi Declaration is insufficiently detailed to meet its disclosure obligations.

IRS asserts that all four records are entirely exempt from disclosure under Exemption 7(A).[3] Exemption 7(A) allows agencies to withhold records which "could reasonably be expected to interfere with law enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) is intended to "prevent disclosures which might prematurely reveal the government's cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000). An agency relying on Exemption 7 must show that disclosure could reasonably be expected to cause harm to a pending investigation. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *see also Campbell v. HHS*, 682 F.2d 256, 259 (D.C. Cir. 1982). "Exemption 7(A)

---

[2] Typically, agencies provide to courts an itemized description of all withheld and redacted documents, with a brief description of the document, the exemptions claimed, and the bases for the claimed exemptions. This index, known as a *Vaughn* Index, allows courts to adequately assess the validity of an agency's withholdings. *See Vaughn v. Rosen*, 484 F. 2d 820, 827 (D.C. Cir. 1973).

[3] IRS also asserts that all withheld records are exempt under Exemption 3, and that portions of them are exempt under Exemptions 6 and 7(C). Because the Court finds that all documents are appropriately withheld under Exemption 7(A), it does not further analyze the remaining proffered exemptions. *See Utahamerican Energy, Inc. v. U.S. Dep't of Labor*, 685 F.3d 1118, 1123 (D.C. Cir. 2012) (explaining that the government need only prevail on one exemption).

permits the government to withhold 'documents related to an ongoing investigation from the investigation's target because disclosure would reveal the scope and direction of the investigation and could allow the target to destroy or alter evidence, fabricate fraudulent alibis, and intimidate witnesses.'" *EduCap Inc. v. IRS*, No. 07-cv-2106, 2009 WL 416428 at *5 (D.D.C. Feb. 18, 2009) (quoting *North v. Walsh*, 881 F.2d 1088, 1098 (D.C. Cir.1989)). "Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Id.* (citing *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980); *see also Robbins Tire*, 437 U.S. at 234-35. "Rather, federal courts may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.'" *Barney*, 618 F.2d at 1273 (quoting *Robbins Tire*, 437 U.S. at 236).

As this precedent makes clear, Exemption 7(A) is designed to allow law enforcement agencies to avoid premature disclosure of their evidence. It is a wide-ranging exemption that is intended to protect not only evidence contained in a record, but also its intended use in enforcement proceedings. Because of its breadth, Exemption 7(A) is limited to pending enforcement actions. *See Robbins Tire*, 437 U.S. at 234-35.

IRS tax examinations constitute "law enforcement" investigations, *see Vento v. IRS*, 714 F. Supp. 2d 137, 148 (D.D.C. 2010); *see also EduCap*, 2009 WL 416428 at *4 ("An IRS audit is a 'law enforcement' activity for purposes of Exemption 7."). Ms. Agrama does not contest that the IRS examination of her taxes and potential penalties was currently pending at the time of the Request. She argues, however that the Chersicla Report, already released by IRS, itself identifies and substantively describes the four records withheld by the Service. Thus, she

13

contends that IRS must either demonstrate that the four withheld records are *not* those identified in the Chersicla Report, or disclose them. *See* Pl.'s Opp'n at 12-13.

This argument also fails. First, it relies solely on the fact that the Chersicla Report describes four documents and IRS withheld four documents; no further evidence exists that they are the same, and Ms. Agrama admits it may simply be a coincidence. *Id.* Only her speculation connects the two groups.

Further, even if the documents were the same, the fact that they are described in the Chersicla Report does not invalidate reliance on an applicable FOIA Exemption by IRS. It is true that records that have entered the public domain, such as through disclosure in a public trial, may not be protected by Exemption 7(A). *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."). However, that is not the case here; Ms. Agrama asserts only that they have been substantively described by the Chersicla Report. The burden of showing that the contested records have entered into the public domain falls on the requesting party, *see id.*, and Ms. Agrama "has the burden of showing that there is a permanent public record of the" records she seeks. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). Even if the gist of the documents were described by the Chersicla Report, that would not be sufficient to trigger the public-domain doctrine. Ms. Agrama has not met her burden, and the government is not obligated to "prove the negative." *Id.* It would also not mean that the government did not have a valid law enforcement interest in withholding the full documents themselves, which may contain much more information than just a summary included in another report. Ms. Agrama's argument is therefore without merit.

The Court further concludes that the records have been properly withheld under Exemption 7(A), and that no *Vaughn* Index or more detailed declarations are necessary. Ms. Agrama is quite candid: she wants access to records related to an ongoing IRS investigation of herself in order to quash any penalties before they are assessed. IRS withheld four records on the ground that disclosing them would interfere with that investigation. This justification falls well within the boundaries of Exemption 7(A). Exemption 7(A) is intended to "prevent disclosures which might prematurely reveal the government's cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations." *Maydak*, 218 F.3d at 762. Disclosure of the contested documents may do harm to IRS's investigation in ways that do not relate to the substantive content possibly summarized in the Chersicla Report. Ms. Agrama's call for a *Vaughn* Index, or more detailed descriptions of the withheld records, is not supported by FOIA. The Court concludes, based on the public and *in camera* submissions by the IRS, that such further detail is unwarranted. To require further disclosure of information would destroy the purpose of the Exemption.

**C. Segregability**

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it must release "any reasonably segregable portions" of responsive records that do not contain exempt information. *Schoenman v. FBI*, 575 F. Supp. 2d 136, 155 (D.D.C. 2008); 5 U.S.C. § 552(b). An agency bears the burden of demonstrating that all reasonably segregable portions of a record have been disclosed, and may do so by "offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

15

IRS states that it has "attempted to make available to the plaintiff every reasonably segregable non-exempt potion of every responsive record." Valvardi Decl. ¶ 12. No evidence casts doubt on this sworn statement, and the Court finds that IRS has satisfied its obligation to release all segregable factual information.

**CONCLUSION**

For reasons stated above, the Court will grant the IRS Motion for Summary Judgment [Dkt. 10], and deny Ms. Agrama's Cross-Motion for Summary Judgment [Dkt. 12]. Judgment will be entered in favor of the IRS. A memorializing order accompanies this memorandum opinion.

Date: October 20, 2017
/s/
ROSEMARY M. COLLYER
United States District Judge